**CAMPBELL SOUP COMPANY, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 91–05–00403.**

United States Court of International Trade.

May 16, 1994.

Sandler Travis & Rosenberg, Ronald W. Gerdes, Joseph A. Black, and David G. Curran, Washington, DC, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen. of the U.S.; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Bruce N. Stratvert (Jacob B. Diamond, Office of Asst. Chief Counsel, Intern. Trade Litigation, U.S. Customs Service, Washington, DC, of counsel), for defendant.

Katten Muchin & Zavis, Robert F. Seely, Chicago, IL, for amicus curiae, Baxter Healthcare Corp.

**OPINION**

CARMAN, Judge:

Plaintiff initiated this action pursuant to 19 U.S.C. § 1515(a) (1988) to contest the denial of its protest against the United States Customs Service's (Customs) appraisal of certain merchandise that plaintiff had imported from Mexico. This Court has jurisdiction under 28 U.S.C. § 1581(a) (1988) and, for the reasons which follow, enters judgment for defendant.

### I. BACKGROUND

Plaintiff is the importer of record for the merchandise at issue in this case. The subject merchandise consists of tomato paste produced in Mexico by plaintiff's subsidiary, Sinalopasta, S.A. de C.V.

During the period at issue, Sinalopasta received rebates of $1,327,284.00 from the Mexican government for domestic taxes the company had paid on manufacturing input materials. Plaintiff's Statement of Material Facts Not in Dispute (Statement) at ¶ 8.[1] The company obtained the rebates under a program known as "Certificado Export de Devolucion de Impuestos," or "CEDIS," under which the government issues tax certificates in amounts "equal to a stated percentage of the value of exported merchandise." *PPG Indus., Inc. v. United States,* 13 CIT 297, 298 n. 3, 712 F.Supp. 195, 197 n. 3 (1989) (citation omitted); *see also* Statement at ¶ 6. Recipients may apply the certificates as credit toward payment of other Mexican taxes or may exchange the certificates for cash from the Bank of Mexico after paying a commission. Statement at ¶ 7. Sinalopasta accounted for the rebates in its financial statements as "miscellaneous profit and loss." *Id.* at ¶ 9; Sinalopasta Financial Statements for Period Ending June 30, 1982 at 3.

In connection with its entries of the subject merchandise into the United States, plaintiff submitted a cost submission form to Customs. On the form, plaintiff calculated Sinalopasta's profits using the CEDIS rebates as profits and deducted the same amount from the subsidiary's expenses. Statement at ¶¶ 10, 11; Pl.'s Compl. at ¶ 14; Def.'s Answer at ¶ 14. Plaintiff's form also indicated Sinalopasta had $926,636.00 in expenses and net profits of $1,739,182.00. Statement at ¶ 13. The amount of expenses reflected the amount of income taxes the subsidiary paid during the period under review. *See id.* at ¶¶ 12, 13.

Plaintiff's form also shows Sinalopasta incurred $416,324.00 in freight costs for materials used to produce the subject merchandise. *Id.* at ¶ 20. This figure, however, actually represents the inland freight costs incurred by Sinalopasta to transport the merchandise from its loading docks in Mexico to the United States border. *See id.* at ¶ 21.

Before Customs appraised the subject merchandise, it audited plaintiff's cost submission form as well as certain books and records of plaintiff and Sinalopasta. Customs auditors recommended treating the $926,636.00 which plaintiff had characterized as expenses as profit. *Id.* at ¶ 15 (citing Ex.

---

1. During oral argument in this case, defense counsel indicated defendant's assent to all 30 items set forth in plaintiff's Statement. *See* Transcript of Oral Argument at 2.

A *in* Customs Regulatory Audit Report No. 6–83–87I–012 (Customs Audit) at 2). The auditors also recommended disallowing the deduction from expenses that plaintiff claimed for the CEDIS amounts.[2] Customs officials, however, did not suggest reducing Sinalopasta's profits by the amount of CEDIS payments. Statement at ¶ 17.

Customs subsequently appraised the merchandise using the "computed value" method established in 19 U.S.C. § 1401a(e) (1988). This statute provides as follows in relevant part:

**(e) Computed value**

(1) The computed value of imported merchandise is the sum of—

(A) the cost or value of the materials and the fabrication and other processing of any kind employed in the production of the imported merchandise;

(B) an amount for profit and general expenses equal to that usually reflected in sales of merchandise of the same class or kind as the imported merchandise that are made by the producers in the country of exportation for export to the United States;

. . . .

(2) For purposes of paragraph (1)—

(A) the cost or value of materials under paragraph (1)(A) shall not include the amount of any internal tax imposed by the country of exportation that is directly applicable to the materials or

their disposition if the tax is remitted or refunded upon the exportation of the merchandise in the production of which the materials were used; and

(B) the amount for profit and general expenses under paragraph (1)(B) shall be based upon the producer's profits and expenses, unless the producer's profits and expenses are inconsistent with those usually reflected in sales of merchandise of the same class or kind as the imported merchandise that are made by producers in the country of exportation for export to the United States, in which case the amount under paragraph (1)(B) shall be based on the usual profit and general expenses of such producers in such sales, as determined from sufficient information.

The appraisal incorporated the auditors' recommendations noted above. As a result, Customs disallowed the deduction from expenses that plaintiff had claimed for Sinalopasta's CEDIS payments and included in the subsidiary's profits the amount of CEDIS rebates.[3] *See* Pl.'s Compl. at ¶¶ 14, 15; Def.'s Answer at ¶¶ 14, 15. In addition, Customs determined Sinalopasta's inland freight costs were properly regarded as selling expenses that contributed to the subsidiary's "profit and general expenses" under § 1401a(e)(2)(B). *See* Customs Headquarters Ruling Letter 544344 of Nov. 14, 1990 at 4.

**2.** Although Plaintiff's Statement at ¶ 16 indicates the auditors "recommended disallowance of the deduction ... of the CEDIS amounts from *costs*," the parties' pleadings, other items contained in Plaintiff's Statement, and numerous record documents demonstrates the claimed deduction and recommended disallowance pertained to *expenses*. *See* Pl.'s Compl. at ¶¶ 14, 15; Def.'s Answer at ¶¶ 14, 15; Pl.'s Statement at ¶ 11; Pl.'s Customs Form 247 at 3; Customs Audit, Ex. A at 3; Customs' Appraisement Explanation Letter dated May 21, 1984 at 1–2; Customs' Initial Protest Decision dated May 2, 1988 at 1, 3; Customs' Protest Decision Reconsideration dated Nov. 14, 1990 at 1–2. While the confusion between terms such as "costs" and "expenses" may appear minor, the Court observes such confusion in this case significantly hampered the parties' ability to explicate their respective positions and unnecessarily hindered the Court's ability to resolve the issues presented.

The Court also notes where, as here, such obfuscation arises with respect to statutes, the application of which hinges upon terms such as "costs" and "expenses," counsel's carelessness with details such as statutory terminology becomes all the more inappropriate. *See* 19 U.S.C. § 1401a(e)(2) (1988) (specifying on the one hand the particular treatment Customs should accord to certain items in computing *"cost or value"* under § 1401a(e)(1)(A) and detailing on the other hand how Customs should calculate *"general expenses"* under § 1401a(e)(1)(B)).

**3.** Similar to the confusion noted previously with respect to plaintiff's Statement's characterization of the recommendation made by Customs' auditors, plaintiff's Statement mischaracterized Customs' disallowance of plaintiff's claimed deduction as a deduction from "costs." *See* Statement at ¶ 19.

Plaintiff filed a timely protest under 19 U.S.C. § 1514(a) (1988) to contest Customs' appraisal. Customs denied the protest under 19 U.S.C. § 1515 and, after having paid all liquidated duties, plaintiff commenced this action pursuant to 28 U.S.C. § 1581(a) within the time allowed by law.

## II. CONTENTIONS OF THE PARTIES

In its papers, plaintiff raises two principal claims against Customs' appraisal of its merchandise. First, plaintiff charges Customs should consider the CEDIS rebates as a reduction in expenses for appraisement purposes based on the plain language contained in § 1401a(e)(2)(A). Second, plaintiff contends Customs erred in treating Sinalopasta's inland freight charges as part of the subsidiary's general expenses because the agency lacked proof that the subsidiary actually incurred the charges. In its brief, amicus curiae Baxter Healthcare joins plaintiff's position regarding Customs treatment of freight costs, adding the GATT provisions upon which Congress based § 1401a(e), related provisions in § 1401a, and Customs regulations and previous Headquarters Rulings all indicate general expenses under § 1401a(e)(1)(B) do not include freight costs.

Defendant opposes both claims raised by plaintiff. With respect to the CEDIS issue, defendant maintains Customs properly included the rebates as an element of value of the subject merchandise because plaintiff and Sinalopasta accounted for the rebates as profits. As to the freight costs, defendant argues Customs correctly treated the costs as selling expenses because Sinalopasta itself accounted for the costs as selling expenses and such treatment is consistent with generally accepted accounting principles in Mexico.

## III. DISCUSSION

### A. *Standard of Review*

As in all "[c]ivil actions contesting the denial of a protest under section 515 of the Tariff Act of 1930," the Court reviews the record in this case *de novo. See* 28 U.S.C. § 2640(a)(1) (1988). Customs' appraisement decisions carry a presumption of correctness and "[t]he burden of proving otherwise ...

rest[s] upon the party challenging such decision." *See* 28 U.S.C. § 2639(a)(1) (1988); *Moss Mfg. Co. v. United States,* 13 CIT 420, 424, 714 F.Supp. 1223, 1227 (1989), *aff'd,* 8 Fed.Cir. (T) 40, 896 F.2d 535 (1990).

### B. *Summary Judgment*

This case is before the Court on cross-motions for summary judgment. Under the rules of this Court, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). The Court will deny summary judgment if the parties present "a dispute about a fact such that a reasonable trier of fact could return a verdict against the movant." *Ugg Int'l, Inc. v. United States,* 17 CIT ——, ——, 813 F.Supp. 848, 852 (1993) (quotation and citation omitted). "In assessing the parties' claims, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing summary judgment." *Id.* (citation omitted).

This case does not present any genuine issue of material fact. The facts that are germane to the case's resolution are not in dispute. The issues that remain pertain solely to the proper construction of § 1401a(e). Because these issues only involve matters of statutory interpretation, the Court concludes the parties' conflict raises questions of law which the Court may properly resolve by summary judgment.

### C. *Customs' Determination*

The Court begins its review of Customs' determination by examining the "computed value" provisions set forth in 19 U.S.C. § 1401a(e). In general terms, the "computed value" of imported merchandise under § 1401a(e) equals the sum of four figures. The first figure represents "the cost or value of the materials and the fabrication and other processing of any kind employed in the production of the imported merchandise." § 1401a(e)(1)(A). The second figure reflects the "amount for profit and general expenses equal to that usually reflected in sales of

merchandise of the same class or kind as the imported merchandise that are made by the producers in the country of exportation for export to the United States." § 1401a(e)(1)(B). The third and fourth figures are, respectively, amounts for assists and packing costs. § 1401a(e)(1)(C), (D). These latter two figures are not at issue in this case and, therefore, will not be addressed.

The statute further limits what Customs may include in the subject merchandise's "cost or value" under § 1401a(e)(1)(A). Specifically, § 1401a(e)(2)(A) requires Customs to exclude from the "cost or value" calculation under § 1401a(e)(1)(A) "the amount of any internal tax imposed by the country of exportation that is directly applicable to the materials or their disposition if the tax is remitted or refunded upon the exportation of the merchandise in the production of which the materials were used."

The statute does not provide such an exclusion for the "profit and general expenses" calculation under § 1401a(e)(1)(B). With respect to the "profit and general expenses" calculation, the only additional statutory guidance appears in § 1401a(e)(2)(B). This provision reads as follows:

> the amount for profit and general expenses under paragraph (1)(B) shall be based upon the producer's profits and expenses, unless the producer's profits and expenses are inconsistent with those usually reflected in sales of merchandise of the same class or kind as the imported merchandise that are made by producers in the country of exportation for export to the United States, in which case the amount under paragraph (1)(B) shall be based on the usual profit and general expenses of such producers in such sales, as determined from sufficient information.

In contrast to the express exclusion from cost or value of certain amounts "remitted or refunded upon exportation" in § 1401a(e)(1)(A), the plain language of § 1401a(e)(2)(B) does not single out any type of profit or general expense that Customs *must exclude* from its calculations. Instead, the section generally indicates how Customs may compute profits and general expenses

and what the computation may include where "the producer's profits and expenses are inconsistent with those usually reflected in sales of merchandise of the same class or kind as the imported merchandise."

In this action, plaintiff challenges Customs' interpretation of the "computed value" statute with respect to the CEDIS rebates that Sinalopasta received and freight costs that the subsidiary incurred. The Court will consider each of these items in turn.

### 1. CEDIS Rebates

As noted previously, the benefits available under the CEDIS program are in the form of tax certificates. The purpose of the certificates, as described by the Mexican government in an unrelated countervailing duty investigation, is to rebate indirect taxes and promote exports. *Ceramic Tile From Mexico,* 47 Fed.Reg. 7866 (Dep't Comm.1982) (prelim. determination). The Mexican government issues the certificates in amounts "equal to a percentage of the f.o.b. value of the exported merchandise or, if national insurance and transportation are utilized, a percentage of the c.i.f. value of the exported product." *Ceramic Tile From Mexico,* 47 Fed.Reg. 20,012 (Dep't Comm.1982) (final determination). The CEDIS rate represents a "percentage of the value of the [exported] product" as determined by the Secretary of Commerce of Mexico. *Id.* Exporters who receive the CEDIS certificates may apply them "against a wide range of [Mexican] federal tax liabilities (including payroll taxes, value added taxes, federal income taxes, and import duties) over a period of five years from the date of issuance." *Id.* at 20,013.

■ Plaintiff argues Customs incorrectly disallowed plaintiff's deduction from expenses for the CEDIS rebates. Plaintiff asserts the direction contained in § 1401a(e)(2)(A) that Customs must exclude from the "cost or value" calculation under § 1401a(e)(1)(A) the amount of certain internal taxes rebated upon exportation supports the deduction. Pl.'s Br. at 7–10. Plaintiff also claims the purpose of the CEDIS program, which plaintiff maintains is "to *lower* the value of exported merchandise," pre-

cludes Customs from treating the rebates in a manner that would increase the profits used in valuing the subject merchandise. *Id.* at 11–13. In sum, plaintiff contends the rebates should not have affected Customs' appraisement determination. *Id.* Finally, plaintiff charges Customs overstated the rebates' effect on Sinalopasta's profits as the subsidiary could have offset other taxes owed to the Mexican government with the rebate amounts instead of accepting such amounts as cash. *Id.* at 13–14.

At the outset, the Court notes plaintiff's reliance on § 1401a(e)(2)(A) is wholly misplaced. Section 1401a(e)(2)(A) only applies to Customs' "cost or value calculation" under § 1401a(e)(1)(A). Plaintiff, however, seeks a deduction from "general expenses,"[4] the calculation of which depends on the application of § 1401a(e)(1)(B), (e)(2)(B). Consequently, because § 1401a(e)(2)(A) is inapplicable to the "general expenses" determination under § 1401a(e)(1)(B), plaintiff's argument based on § 1401a(e)(2)(A) must fail.

Plaintiff's second contention with respect to the expense deduction is also unpersuasive. Contrary to plaintiff's suggestion, the purpose underlying Mexico's CEDIS program is immaterial to the application of the computed value provisions contained in § 1401a(e). In drafting the "profit and general expenses" provision in § 1401a(e)(1)(B) and the additional direction in § 1401a(e)(2)(B), Congress clearly did not include a subjective assessment of the purposes underlying a foreign government's rebate program among the factors Customs must consider in appraising merchandise under the computed value method. Because such a consideration is outside the parameters of the inquiry mandated by § 1401a(e), the Court concludes the purposes underlying the CEDIS program do not require Customs to deduct from Sinalopasta's general expenses the amount of taxes that the Mexican government ultimately rebated to the compa-

ny. *Cf. Schweppes, Ltd. v. United States,* 43 Cust.Ct. 608, 611–12 (1959) ("At the outset, we are constrained to observe that the Congress has … laid down a complete and inclusive formula for determining cost of production, and, if a literal construction of its provisions tends to bring about inequities, it is not the function of this court to relieve against them. The remedy lies with the legislature.").

Plaintiff's third argument is equally unconvincing. Similar to the deficiency noted previously with respect to plaintiff's reliance on the purposes underlying the CEDIS program, the fact that Sinalopasta *could have* offset other taxes with CEDIS amounts instead of accepting such amounts as cash is immaterial to the inquiry mandated by § 1401a(e)(1)(B). In short, the statute simply does not require Customs to assess the operation of a foreign government's rebate program in calculating a foreign producer's general expenses under the computed value method.

Moreover, to the extent plaintiff's position depends on how Sinalopasta might have otherwise used the rebates, the Court finds plaintiff's position conflicts with the plain language of § 1401a(e)(1)(B). This section indicates Customs must consider the *actual* transactions undertaken by the foreign producer under review and analyze the producer's accounting of those transactions. The record in this case shows Sinalopasta accounted for the CEDIS rebates on its books under a category entitled "miscellaneous profit & loss" and effectively used the rebates as credits to offset other losses. *See* Sinalopasta Financial Statements for the Period Ending June 30, 1982 at 3. Similarly, on its cost submission form, plaintiff included the CEDIS amounts in profit, but reduced foreign operating expenses by the same amounts. *See* Campbell Soup Company Cost Submission to U.S. Customs Service for Period July '81 through June '82 at 3, Sched. 5;

---

4. *See* Pl.'s Compl. at ¶¶ 14, 15 (alleging plaintiff sought a deduction from expenses and Customs disallowed the deduction); Def.'s Answer at ¶¶ 14, 15 (admitting plaintiff allegations); Pl.'s Statement at ¶ 11 (noting plaintiff deducted the rebate amounts from expenses on its cost submission form); Pl.'s Customs Form 247 at 3

(same); Customs Audit, Ex. A at 3; Customs' Appraisement Explanation Letter dated May 21, 1984 at 1–2 (same); Customs' Initial Protest Decision dated May 2, 1988 at 1, 3 (same); Customs' Protest Decision Reconsideration dated Nov. 14, 1990 at 1–2 (same).

Customs Audit, Ex. A at 3. Most significant, however, is the fact that plaintiff has not pointed to anything in Sinalopasta's accounting statements or elsewhere in the record which indicates the subsidiary actually treated as expenses the taxes that the Mexican government ultimately rebated through the CEDIS program. The lack of evidence demonstrating Sinalopasta treated the CEDIS amounts as expenses compels the Court to conclude plaintiff has failed to rebut the presumption of correctness attached to Customs' decision to disallow the deduction that plaintiff sought for the CEDIS amounts. *See* 28 U.S.C. § 2639(a)(1); *Moss,* 13 CIT at 424, 714 F.Supp. at 1227.

### 2. Freight Costs

■ The second challenge posed by plaintiff concerns Customs' inclusion of Sinalopasta's inland freight costs as part of the subject merchandise's dutiable value. Plaintiff claims the transaction value appraisement method under § 1401a(b), case law relating to the predecessor statute for the computed value method, and the GATT provisions upon which Congress based § 1401a all indicate Customs improperly regarded the freight costs as part of the merchandise's dutiable value. Baxter relies on the same matters as plaintiff to support plaintiff's position. Baxter, however, also argues the deductive value appraisement method contained in § 1401a(d), both statutory predecessors of the current computed value method, and various Customs decisions demonstrate the computed value method excludes freight costs.

The Court turns first to plaintiff's and Baxter's suggestion that it read the provisions governing the transaction value, deductive value, and computed value appraisement methods *in pari materia.* Specifically, plaintiff and Baxter cite to the exclusion from "price paid or payable" in the transaction value method for "costs, charges, or expenses incurred for transportation ... and related services incident to the international shipment of the merchandise from the country of exportation to the place of importation in the United States." *See* 19 U.S.C. § 1401a(b)(4)(A) (1988). The parties also refer to the reduction from "price" in the deductive value method for "the actual costs and associated costs of transportation ... incurred with respect to international shipments of the merchandise concerned from the country of exportation to the United States." *See* 19 U.S.C. § 1401a(d)(3)(A)(ii) (1988). In essence, plaintiff and Baxter argue the foregoing passages indicate Congress intended to preclude Customs from using freight costs to determine dutiable value under *any* of the appraisal methods contained in § 1401a.

■ Plaintiff's and Baxter's argument does not persuade the Court that Congress intended to exclude inland freight costs such as those incurred by Sinalopasta from imported merchandise's computed value. As a general matter, statutes which relate to the same subject matter or have the same purpose or object are considered *in pari materia* and must be read together. RUTH F. STURM, CUSTOMS LAW AND ADMINISTRATION, § 51.6, at 59 (3d ed. 1992) (citations omitted). Yet, even when considered *in pari materia,* as urged by plaintiff and Baxter, the various appraisement statutes simply do not indicate a legislative intent to exclude categorically inland freight costs from all appraisement determinations made pursuant to· § 1401a. To the contrary, a review of the scheme established in § 1401a shows Congress adopted five discrete methods for determining the value of imported merchandise. *See* § 1401a(a)(1)(A)–(F) (setting forth the order in which the various appraisal methods apply); *see also* S.REP. No. 249, 96th Cong., 1st Sess. 20, 114 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 406, 500 (noting the appraisal methods have a "hierarchical" order and "order of priority").

The Court finds the diverse language contained in each of the provisions in § 1401a(a) through (e) underscores the mutual exclusivity of each appraisement method and the differences in their scope. For example, in general terms, the transaction and deductive value methods base appraisement determinations on the *price* of the imported merchandise or related merchandise with numerous adjustments. *See* § 1401a(b)-(d). On the other hand, the computed value method focuses on several components, including the

costs to produce the merchandise, the profit and expenses actually realized or incurred, and other income and expense items. *See* § 1401a(e). The distinctions among the factors that inform Customs' determinations under the various appraisement methods strongly suggest Congress intended to separate the inquiries required by each method. In short, as the Customs Court observed previously, each method provides "a complete and inclusive formula" that Customs must apply accordingly. *Schweppes,* 43 Cust.Ct. at 611–12.

Moreover, because Congress expressly provided for transportation costs in connection with the transaction and deductive value methods and indicated nothing in this regard in drafting the computed value statute, it would appear Congress did not intend to preclude Customs from using such costs in appraising merchandise under the computed value method. In sum, Congress' silence indicates no specific exclusion or reduction from value based on transportation costs exists with respect to the computed value appraisement method. As a result, the Court concludes the statutory provisions contained in § 1401a(b)(4)(A), (d)(3)(A)(ii) which prescribe specific treatment for transportation costs under the transaction and deductive value appraisement methods do not apply to appraisements under the computed value method in § 1401a(e).

The Court next considers plaintiff's and Baxter's contention that the predecessors of the current computed value statute demonstrate the computed value method excludes inland freight costs such as those incurred by Sinalopasta. The computed value standard in § 1401a(e) stems from the constructed value and cost of production standards which existed under former law. *See* H.R.REP. No. 317, 96th Cong., 1st Sess. 94 (1979) ("The computed value standard under the proposed law conceptually follows the constructed value standard under present Section 402 and the cost of production standard under present Section 402a.") (emphasis added). The former constructed value standard based appraised value on the sum of

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

19 U.S.C. § 1401a(d) (1976). The cost of production standard used the sum of

(1) [t]he cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) [t]he usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) [t]he cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) [a]n addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordi-

narily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

19 U.S.C. § 1402(f) (1976).

Only one of the cases cited by plaintiff and Baxter addressed the question of whether inland freight costs should figure into imported merchandise's appraised value under the former constructed value or cost of production appraisement methods.[5] In *R.J. Saunders & Co. v. United States,* the Customs Court considered whether the cost of production measure under the former § 1402(f) included the cost of transporting the subject merchandise from the producer's factory in Czechoslovakia to Hamburg, Germany, the port of shipment to the United States. 26 Cust.Ct. 578, 580–81 (1951). The court noted all of the appraisal measures set forth in § 1402(f) except for the cost of production measure referred to the merchandise's value "in the 'principal market' or 'principal markets,' as the case may be, of either the country of exportation or of the United States[,]" but observed "the cost of production formula, however is silent as to the place at which the value represented thereby is to be determined." *Id.* at 580–81. The court nevertheless found the purpose of the cost of production measure "is to ascertain a value for merchandise in the country of manufacture or production, and this must particularly be true when, as here, the country of manufacture or production is also the country of exportation." *Id.* at 581. The court thereafter concluded "the charge for freight from the country of exportation, Czechoslovakia, to another country is not properly a part of the cost of production under the statutory formula." *Id.*

Several years before the Customs Court decided *R.J. Saunders,* the Court of Customs and Patent Appeals addressed the freight

cost issue in connection with the foreign value appraisement measure under former § 402(c) of the Tariff Act of 1930. *See United States v. Zellerbach Paper Co.,* 28 C.C.P.A. 303, C.A.D. 159, 1941 WL 4536 (1941). Section 402(c) read as follows:

> The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Tariff Act of 1930, ch. 497, § 402(c), 46 Stat. 590, 708 (repealed 1979). The foreign producer in *Zellerbach* shipped its merchandise from its places of manufacture to the ports of exportation at either Hamburg or Bremen, Germany. *Zellerbach,* 28 C.C.P.A. at 304. The importer contended the cost of shipping from the place of manufacture to the port of exportation "should have been deducted from the invoice price to the importer" to determine the merchandise's appraised value. *Id.* Upon reviewing the record, the appellate court emphasized the following facts: (1) the per unit price at which the foreign producer sold its merchandise in the German home market remained the same regardless of where the buyer was located; (2) if the buyer paid freight charges, the producer or seller would deduct the charges from the invoice; and (3) if the producer or seller paid the freight charges, the buyer "would remit the total amount (based on the same unit price) to the seller." *Id.* at 306. Based on these facts, the court concluded the per unit price paid by the German buyers remained the same regardless of where the buyers were located and always included freight costs.

---

5. Contrary to the reading urged by Baxter, the Customs Court in *International Packers, Ltd. v. United States* considered whether the constructed value measure under the former § 1401a(d) included *export taxes* paid to the Argentine govern-

ment and not freight or transportation costs. *See* 52 Cust.Ct. 518 (1964). Consequently, the Court concludes the *International Packers* decision does not aid the freight cost inquiry.

*Id.* at 308. In short, because such price was identical in all German markets and included freight costs, the court held the merchandise's dutiable value should reflect the freight costs the producer incurred to transport the merchandise to the ports of exportation. *See id.* at 308–10.

The Customs Court in *R.J. Saunders* referred to *Zellerbach,* but distinguished the facts it addressed from those underlying the appellate decision. In contrast to *Zellerbach,* the *R.J. Saunders* court found the record before it did not indicate "the manufacturer and exporter paid the freight to inland destination in all instances and that the price was the same no matter what the destination was." 26 Cust.Ct. at 580. The court also noted, unlike *Zellerbach,* "the inland destination in this case, Hamburg, Germany, was not within the country of exportation, but was obviously the most convenient port of shipment for the overseas portion of the journey of exportation of the goods." *Id.* In distinguishing *Zellerbach,* however, the *R.J. Saunders* court did not appear to attach any significance to the fact that *Zellerbach* involved the foreign value appraisement measure—a measure dissimilar to the cost of production measure. *See id.* at 580–81. Instead, the court emphasized the importance of applying the cost of production measure in the country of exportation, Czechoslovakia, and concluded "the charge for freight from the country of exportation . . . to another country is not properly a part of the cost of production under the statutory formula." *Id.* at 581.

Contrary to plaintiff and Baxter, the Court finds *R.J. Saunders* inapplicable to the facts presented in this case. In *R.J. Saunders,* the Customs Court concluded because the cost of production measure must apply in the country of exportation and Czechoslovakia was the country of exportation, freight costs incurred to transport the merchandise *beyond* Czechoslovakia to Germany could not form part of the merchandise's dutiable value. *Id.* The *R.J. Saunders* court, therefore, had no occasion to consider the problem raised in the instant case—namely, whether costs incurred *within* the country of exportation are includible in merchandise's dutiable value. Because *R.J. Saunders* did not reach

this issue, the Court finds the case's reasoning and holding inapplicable in this action.

The Court also finds the GATT provisions cited by plaintiff and Baxter do not support the exclusion of freight costs from dutiable value. The most pertinent of these provisions are articles 6 and 8.2 of the Agreement on Implementation of Article VII of the General Agreement on Tariffs and Trade (GATT Customs Valuation Code). Article 6 sets forth the GATT's computed value appraisement method and reads as follows in relevant part:

> The customs value of imported goods under the provision of this Article shall be based on a computed value. Computed value shall consist of the sum of:
>
> (a) the cost or value of materials and fabrication or other processing employed in producing the imported goods;
>
> (b) an amount of profit and general expenses equal to that usually reflected in sales of goods of the same class or kind as the goods being valued which are made by producers in the country of exportation for export to the country of importation;
>
> (c) the cost or value of all other expenses necessary to reflect the valuation option chosen by the Party under Article 8.2

Customs Valuation Code, art. 6, *reprinted in* LAW AND PRACTICE UNDER THE GATT II.C.3 at 59–60 (Kenneth R. Simmonds & Brian H.W. Hill eds. 1988). Article 8.2, in turn, provides for the following:

> In framing its legislation, each Party shall provide for the inclusion in or the exclusion from the customs value, in whole or in part, of the following:
>
> (a) the cost of transport of the imported goods to the port or place of importation;
>
> (b) loading, unloading and handling charges associated with the transport of the imported goods to the port or place of importation; and
>
> (c) the cost of insurance.

*Id.* at art. 8.2, *reprinted in* LAW AND PRACTICE UNDER THE GATT II.C.3 at 62. Based on articles 6 and 8.2, the parties contend

Congress' failure to provide for transportation costs in the computed value statute indicates the legislature sought to exclude such costs from the computed value method. The parties also maintain such an interpretation would conform United States law to the Customs Valuation Code.

The Court finds plaintiff's and Baxter's GATT-based arguments unpersuasive. The Court rejects these arguments for the reasons discussed previously with respect to plaintiff's and Baxter's reliance on the transaction and deductive value appraisement methods contained in § 1401a(b)(4)(A), (d)(3)(A)(ii). As noted above, the Court does not construe Congress' failure to address transportation costs in connection with the computed value method in § 1401a(e) to indicate an intention to exclude such costs from appraisements employing this method. Moreover, the Court does not believe Congress' omission in this regard demonstrates the legislature did not act in accordance with article 8.2. Even assuming Congress did not conform United States laws with the GATT, such a problem is immaterial to the Court's resolution of this case. *See Suramerica de Aleaciones Laminadas, C.A. v. United States,* 10 Fed.Cir. (T) ——, ——, 966 F.2d 660, 667 (1992) ("While we acknowledge Congress's interest in complying with U.S. responsibilities under the GATT, we are bound not by what we think Congress should or perhaps wanted to do, but by what Congress in fact did. The GATT does not trump domestic legislation; if the statutory provisions at issue here are inconsistent with the GATT, it is a matter for Congress and not this court to decide and remedy.") (citations omitted). Consequently, the Court finds the GATT provisions cited by the plaintiff and Baxter do not demonstrate Customs improperly treated Sinalopasta's inland freight costs as part of the subject merchandise's dutiable value. In addition, none of the other authorities cited by Baxter compels a different conclusion. The Court concludes, therefore, plaintiff and Baxter have failed to rebut the presumption of correctness attached to Customs' decision to treat Sinalopasta's inland freight costs as part of the subject merchandise's dutiable value. *See* 28 U.S.C. § 2639(a)(1); *Moss,* 13 CIT at 424, 714 F.Supp. at 1227.

### IV. CONCLUSION

After considering all of the parties' contentions, the Court makes the following holdings: (1) Customs properly disallowed the deduction from general expenses that plaintiff claimed for taxes paid by its subsidiary and subsequently rebated under Mexico's CEDIS program; and (2) Customs correctly treated as general expenses the amount of freight costs that plaintiff's subsidiary incurred from its loading docks to the United States border. The Court will enter judgment for defendant.

### ORDER

This case having been duly submitted for decision, and the Court after due deliberation, having rendered a decision herein; now, in conformity with said decision it is hereby

**ORDERED** that the appraisement by the United States Customs Service of the imported merchandise at issue in this case is sustained; and it is further

**ORDERED** that plaintiff's motion for summary judgment is denied; and it is further

**ORDERED** that defendant's cross-motion for summary judgment is granted; and it is further

**ORDERED** that this action is dismissed.